# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

Case No. 5D2025-1050
LT Case No. 2023-CA-000384

———————————————

AMELIA ISLAND SANCTUARY
PROPERTY OWNERS
ASSOCIATION, INC.,

Appellant,

v.

NASSAU COUNTY, FLORIDA;
RIVERSTONE PROPERTIES, LLC;
and CITIZENS AGAINST RUNAWAY
DEVELOPMENT, INC.,

Appellees.

———————————————

On appeal from the Circuit Court for Nassau County.
Marianne Lloyd Aho, Judge.

Arthur I. Jacobs and Douglas A. Wyler, of Jacobs Scholz & Wyler, LLC, Fernandina Beach, for Appellant.

Jeffrey L. Hinds and Jay J. Barlett, of Bartlett Loeb Hinds & Thompson, PLLC, Tampa, for Appellee, Nassau County, Florida.

Fred D. Franklin, Jr., T.R. Hainline, Jr., and Cristine M. Russel, of Rogers Towers, P.A., Jacksonville, for Appellee, Riverstone Properties, LLC.

No Appearance for Remaining Appellee.

July 10, 2026


MAKAR, J.

At issue is a settlement agreement between Nassau County, Florida, and Riverstone Properties, LLC, the latter owning fifty-one pristine oceanfront acres on the southern tip of Amelia Island. The property, which is zoned residential, is sandwiched between Amelia Island State Park on its southern border and a private residential development, The Sanctuary, on its northern border. The Amelia Island Sanctuary Property Owners Association sued the County and Riverstone on the theory that the settlement agreement is a "development order" that is in violation of section 163.3215, Florida Statutes, which requires development orders to be consistent with the Nassau County 2030 Comprehensive Plan.

On appeal, the Association challenges the trial court's conclusion that the settlement agreement is not a "development order," thereby denying relief on the only claim the Association asserted. The trial court was correct. The settlement agreement does not constitute a "development order," which is defined to mean "any order granting, denying, or granting with conditions an application for a development permit." § 163.3164(15), Fla. Stat. (2026). A "development permit," in turn, "includes any building permit, zoning permit, subdivision approval, rezoning, certification, special exception, variance, or any other official action of local government having the effect of permitting the development of land." *Id.* § 163.3164(16).

The settlement agreement is not the result of an "application" for a "development permit" but, instead, is only the result of a negotiated settlement between the County and Riverstone, who sued the County under the Bert Harris, Jr., Private Property Rights Protection Act, Chapter 70, Laws of Florida. The settlement agreement is simply the resolution of Riverstone's claims, in part, that the County's reduction of the allowable height for structures from 85 feet to 45 feet amounted to a compensable "inordinate burden" under the Bert Harris Act. Indeed, as the County acknowledges, the settlement agreement does not permit any

2

development whatsoever at this time; in fact, development of the property may never occur. As the County represented at oral argument:

> Most of the provisions [in the settlement agreement] have to do with *if development occurs in the future . . . if and when this property develops is an unknown*; . . . it's in its natural state right now. *The County is unaware of any plans to develop it; the County is aware that there has been interest by preservation groups, both public and private, to keep the land exactly as it is.* So, most of the agreement dealing with what happens if development ever comes, and when there is an application for development to the County, most of the agreement deals with those issues to maintain a certain standard of development for the beach park, beach access that won't hurt Riverstone's property.

Fla. Fifth Dist. Ct. of Appeal, *OA 21-1050*, at 21:02-22:02 (YouTube, May 6, 2026), https://www.youtube.com/watch?v=0y-DrBRq5XE&t=1708s (emphases added).

As the highlighted portions make evident, the settlement agreement resolves a dispute between the County and Riverstone, but it does not authorize development of a specific project at this juncture. Riverstone has choices to make. It may decide to pursue development of the property in the future by submitting applications for permits that would be subject to scrutiny and the parameters of the settlement agreement, some of which benefit Riverstone (e.g., a higher height restriction) and some of which benefit the County (increased buffers and beach access). It may choose to sell the property to public or private entities who want to preserve the property in its pristine state. Other scenarios are possible, but the point is that the settlement agreement itself does not fit within the meaning of a "development order."

As such, judgment in the County and Riverstone's favor was appropriate on the *only* theory that the Association presented in the trial court, i.e., that the settlement agreement was a "development order" that was not consistent with the County's comprehensive plan under Chapter 163.

3

It bears noting that a Chapter 163 challenge to a settlement under the Bert Harris Act, *as a general matter*, would undercut the statutory framework the Act established for review of settlement agreements, as this Court held in *Rainbow River Conservation, Inc. v. Rainbow River Ranch, LLC*. *See* 189 So. 3d 312, 315 (Fla. 5th DCA 2016) (rejecting argument that a "Bert Harris Act settlement agreement can never authorize development inconsistent with the local government's existing comprehensive plan because this would violate the Growth Management Act"). This Court observed that Bert Harris settlement agreements may contravene the application of a statute, such as those under Chapter 163, but the infringement is "wisely balanced with a requirement that the agreement be approved by the circuit court only after it ensures that the public interests served by the affected statute are protected." *Id.* at 316.

Notably, this Court in *Rainbow River* did not say "anything goes" when it comes to a Bert Harris Act settlement agreement that potentially violates Chapter 163. Instead, it noted that there "may be a case where the public interests protected by the Growth Management Act can only be protected with a circuit court order that requires the local government to process a comprehensive plan amendment through the ordinary process, before implementation of a settlement agreement." *Id.* In other words, the "extraordinary" scope of a settlement agreement under the Bert Harris Act might warrant a judicial order requiring adjustment of a comprehensive plan through ordinary means. The default that the "Legislature clearly contemplated," however, is that the "public interests served by the Growth Management Act could be satisfied by other means at the circuit court's disposal." *Id.*

The takeaway from *Rainbow River* is that a Bert Harris Act settlement agreement arising from an amendment to a comprehensive plan that imposes an inordinate burden is subject to *mandatory* judicial review and approval under section 70.001(4)(d)2., Florida Statutes, which states:

> When a governmental entity enters into a settlement agreement under this section which would have the effect of *contravening the application of a statute* as it would otherwise apply to the subject real property, the

4

governmental entity and the property owner *shall jointly file an action in the circuit court* where the real property is located *for approval of the settlement agreement by the court* to ensure that the relief granted *protects the public interest served by the statute at issue* and *is the appropriate relief necessary* to prevent the governmental regulatory effort from inordinately burdening the real property.

§ 70.001(4)(d)2., Fla. Stat. (2026) (emphasis added). In such a case, a settlement agreement's contravention of a state statute—which in *Rainbow River* was a settlement that arose from the impact of a comprehensive plan amendment on the private property owner—is permissible only if a circuit court ensures that the public interest is protected and the relief is necessary to prevent the otherwise inordinate burden on the real property in question.

The Association's claim in this case is closely analogous to that in *Rainbow River*, but involves the height restriction in the County's code, which is not a statute. The difference is that the Association attempted to pigeonhole the settlement agreement as a "development order" versus challenging the settlement agreement directly. The County acknowledges that a remedy exists to challenge a Bert Harris settlement agreement directly via an action for declaratory or injunctive relief in the circuit court. *See City of Homestead v. United States*, 346 So. 3d 1205, 1206 (Fla. 3d DCA 2022). In *City of Homestead*, the United States filed a certiorari petition in circuit court to quash a city resolution that resulted from a Bert Harris settlement agreement, but the Third District held that the "*only* option available to the United States is to attack the quasi-legislative action in circuit court for declaratory or injunctive relief." *Id.* (emphasis added). The Association, for unknown reasons, chose not to pursue this available remedy in this case.

Two points. First, the Third District's holding—that circuit courts may review a Bert Harris Act settlement agreement via a complaint for declaratory or injunctive relief—buttresses the conclusion that judicial power exists over such agreements. Florida law itself recognizes broad legal and equitable powers within the jurisdiction of the trial courts "to declare rights, status, and other

5

equitable or legal relations whether or not further relief is or could be claimed." § 86.011, Fla. Stat. (2026).

Second, the Third District's statement that the United States' "only" option was to file a claim for declaratory and injunctive relief must be read in context. The likely reason that a circuit court action was deemed the "only" option at that point in the process was because *the settlement agreement had not yet been approved*. As the appellate court noted in a footnote, the "settlement agreement is presently without effect" and "the parties have not yet jointly filed an action in the circuit court for approval of the settlement agreement, as mandated by the Harris Act." *City of Homestead*, 346 So. 3d at 1205 n.1. (citing § 70.001(4)(d)2., Fla. Stat. (2020))(noting that the settlement agreement "contravenes" a city ordinance and the application of a state statute). In other words, the appellate court concluded that the United States could file its own direct challenge to the city resolution as a quasi-legislative act *before* the settlement was judicially approved; that was the only existing judicial option. When the city and property owner jointly file an action for judicial approval of the settlement agreement, however, another option would then exist, which would be the United States intervening in that action to assert its interest; this option did not exist yet, leaving the declaratory and injunctive relief as the only then-available option.

In this regard, the County and Riverstone relied on section 70.001(4)(d)1. as authority for their settlement agreement. This subsection states:

> When a governmental entity enters into a settlement agreement under this section which would have *the effect of a modification, variance, or a special exception to the application of a rule, regulation, or ordinance* as it would otherwise apply to the subject real property, the relief granted **shall** *protect the public interest* served by the regulations at issue and *be the appropriate relief* **necessary** to prevent the governmental regulatory effort from inordinately burdening the real property. *Settlement offers made under paragraph (c) shall be* **presumed** *to protect the public interest.*

6

§ 70.001(4)(d)1., Fla. Stat. (emphases added). The highlighted portions reflect that this subsection applies to a change in a local regulation or ordinance, such as the County's height restriction; that it requires that a settlement agreement protect the public interest and be necessary to prevent the inordinate burden; and that a presumption exists that the public interest is protected under the settlement agreement. The Association did not directly challenge the settlement agreement pursuant to this provision in the trial court, but asserted it is as authority on appeal for its Chapter 163 challenge.

But is judicial review of a settlement agreement under subsection 70.001(4)(d)1. permissible? One view is that the settlement agreements under this subsection are self-effectuating and insulated from any circuit court review. This argument centers on the fact that judicial review is mandated in section 70.001(4)(d)2. but is not mentioned in section 70.001(4)(d)1.

Another view, and the more reasonable, is that judicial review of the terms of a settlement agreement under section 70.001(4)(d)1. is *permissible*, not mandatory. That *mandatory review* is required in subsection 70.001(4)(d)2.—but is not mentioned in section 70.001(4)(d)1.—suggests only that *mandatory review* is not required in the latter, leaving open the possibility of *discretionary* review. Viewed in this light, it makes no sense that the Legislature would insulate settlement agreements that modify, vary or except local government regulations or ordinances, and thereby potentially endanger the public interest (or exceed the bounds of necessary relief under the Act)—from *any* judicial review whatsoever; it would render this subsection toothless and undercut the Act's legislative purpose to balance property rights with the public interest. What would stand in the way of settlement agreements whose provisions disserve the public interest and are directly contrary to the Act's goals?

Most importantly, the Legislature has made its intent clear: circuit courts "may enter any orders necessary to effectuate the purposes of this section and to make final determinations to effectuate relief available under this section." § 70.001(7)(a), Fla. Stat. (2026). As this Court has held, the "Bert Harris Act expressly grants circuit judges broad power" under this subsection. *Rainbow*

7

*River*, 189 So. 3d at 314 (quoting § 70.001(7)(a), Fla. Stat.). The Legislature's broad statement of power of judicial review under the Act easily includes review of the requirements of section 70.001(4)(d)1., which are that the public interest "shall" be protected and the relief granted to the property owner must be "necessary," both of which are essential purposes of the Act. The view that section 70.001(4)(d)1. settlement agreements are immune from judicial review would nullify this grant of judicial authority as well as the legislative grant of judicial jurisdiction to declare rights and enjoin actions.

Moreover, section 70.001(4)(d)1. states that "[s]ettlement offers made under paragraph (c) shall be *presumed* to protect the public interest," thereby implying that the presumption can be overcome. Why else have a presumption except to allow it to be challenged and a trier of fact to decide the matter? *See* § 90.302(1), Fla. Stat. (2026) (noting that one type of rebuttable presumption requires a "trier of fact to assume the existence of the presumed fact, unless credible evidence sufficient to sustain a finding of the nonexistence of the presumed fact is introduced, in which event, the existence or nonexistence of the presumed fact shall be determined from the evidence without regard to the presumption"). The view that judicial review is unavailable would shield the statutory presumption from scrutiny, thereby making it a conclusive presumption, which is unconstitutional. *State Farm Mut. Auto. Ins. Co. v. Malmberg*, 639 So. 2d 615, 616 (Fla. 1994) (stating that "to be constitutional, a statutory presumption must be rebuttable" and that a "conclusive presumption violates due process in its failure to provide the adverse party any opportunity to rebut" (internal citation omitted)).

In addition, the interests served by the growth management laws and the Bert Harris Act each involve citizen enforcement of their terms. A "comprehensive plan is similar to a constitution for all future development within the governmental boundary." *Citrus County v. Halls River Dev., Inc.,* 8 So. 3d 413, 420–21 (Fla. 5th DCA 2009). "Citizen enforcement is the primary tool for holding local government to its land use 'constitution' by insuring the consistency of development orders with the city's or county's comprehensive plan." *Nassau County v. Willis,* 41 So. 3d 270, 276 (Fla. 1st DCA 2010) (footnote omitted).

8

In *Rainbow River*, this Court rejected the argument that judicial review of the Bert Harris Act settlement agreement was unnecessary "because the court was required to accept the stipulation of the settling parties that the agreement met the requirements for circuit court approval." 189 So. 3d at 314. To the contrary, a trial court is required to take evidence from the public as intervenors to ensure that the purpose of the statute was achieved. *Id.* at 315. In this regard, the Bert Harris Act and Chapter 163 coincide; both serve the public interest provided there is "robust public participation" in the process. *Id.* (noting that "active public participation" is necessary). As this Court noted, the property owners

> are incorrect in their view of the limited role of intervenors in this type of proceeding. In our view, the circuit court could not have ensured protection of the public interest in active participation in the planning process without some mechanism that allowed robust public input. Given the broad powers granted to the circuit court in the Bert Harris Act, the court could have ordered the City to hold public hearings, and then considered the comments from those proceedings. Further, where the public has intervened and contests whether the settlement agreement even meets the statutory requirements for approval, it would seem to be difficult, if not impossible, for the circuit court to ensure satisfaction of the public interest in public participation without hearing directly from the intervenors and considering their evidence.

*Id.* For like reasons, it would be impossible to ensure that the essential requirements for a Bert Harris Act settlement agreement—public interest and only necessary relief—be met without robust public participation from intervenors (as in *Rainbow River*) or via a judicial challenge to a settlement under 70.001(4)(d)1. As this Court said in *Rainbow River*, "[t]he trial court erred when it approved the settlement without even considering, much less 'ensuring,' that the agreement protects those interests." *Id.*

9

In summary, affirmance is warranted because the sole theory the Association has asserted is that the settlement agreement is a "development order" reviewable under Chapter 163, which it is not. Other available avenues of relief have not been asserted in this case, thereby requiring affirmance.

AFFIRMED.


LAMBERT, J., concurs.
MACIVER, J., concurs with opinion.

_____


***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

MACIVER, J., concurring with opinion.

I concur fully with the holding of the majority opinion. That is—our determination that the settlement agreement in question was not a development order and therefore the challenge under chapter 163, Florida Statutes, was not authorized. Notably this is all that is necessary to resolve the case.

As to the further discussion regarding the dichotomy of settlement procedures under sections 70.001(4)(d)1. and 70.001(4)(d)2., Florida Statutes, while not necessary to the resolution of the appeal and thus not part of the holding, I do agree that given the length of discussion about these provisions during the pendency of the appeal, some discussion can be useful.

The main thrust of the majority observation is that section 70.001(4)(d)1. provides a presumption that the settlement is within the public interest and therefore implicitly that presumption may be rebutted. In other words, judicial review of a settlement agreement under section 70.001(4)(d)1. is permissible while judicial review under 70.001(4)(d)2. is mandatory. I think that this view is technically correct, but I worry that future litigants will read the majority's recognition that judicial review is available as an invitation to shift the determination of which policies are or are not within the public interest from local governments to the courts.

In my view, the presumption language under section 70.001(4)(d)1. sets a much higher bar by recognizing that what policies constitute "the public interest" are determined in the first instance by legislative rather than judicial bodies. All political power in Florida belongs to the people. Art. I, § 1, Fla. Const. Policy decisions, which in their sum amount to what we would call the public interest, are normally delegated at each level of government from the people to their legislative representatives. Courts are typically and correctly wary to intrude upon those decisions. *See*

11

*Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 918 (Fla. 1985) ("[U]nder the constitutional doctrine of separation of powers, the judicial branch must not interfere with the discretionary functions of the legislative or executive branches of government absent a violation of constitutional or statutory rights."); *S. All. for Clean Energy v. Graham*, 113 So. 3d 742, 745 (Fla. 2013) (emphasizing that "it is not this Court's function to substitute its judgment for that of the Legislature as to the wisdom or policy of a particular statute"); *see also Martin County v. Yusem*, 690 So. 2d 1288, 1295 (Fla. 1997) (adopting the fairly debatable standard of review for comprehensive plan amendments because they are legislative decisions resulting in the formulation of policy).

Where the government entity that has been charged with making such policy decisions is the same entity entering into the settlement agreement, the compliance with public interest is correctly presumed. Further, while the language of section 70.001(4)(d)1. may not prohibit judicial review where it is otherwise authorized (as thoroughly explained by the majority), it also does not authorize judicial review where it would be otherwise prohibited. The clear implications of legislative fiat, separation of powers and political question doctrine would have to be fleshed out in individual future cases. However, while the settlement provisions of the Bert Harris Act do not provide a prohibition to judicial review of the public interest question, it is likely that in most cases separation of powers concerns would.